**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clarendon America Insurance Company, et al., | No. CV-20-08078-PCT-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| R.E.P. Custom Builders Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Praetorian Specialty Insurance Company's ("Praetorian") Motion for Summary Judgment (Doc. 57). Defendants Bart and Gloria Danner-Whiles (the "Whiles") and R.E.P. Custom Builders Incorporated ("REP") have filed a Response in Opposition (Doc. 64), and Praetorian has filed a Reply (Doc. 65).[1] For the following reasons, the Court grants the Motion in part and denies it in part.

**I.   Background**[2]

In early 2006, the Whiles wanted to build a house in Cornville, Arizona, and so they hired REP as their general contractor. (Doc. 57 at 3). To begin construction, REP contracted with non-party McBride Excavating ("McBride") to prepare the ground on which the house would be built, which entailed grading the land and constructing the building pad. The work that went into preparing the land, REP's geotechnical engineering

---

[1] Both Praetorian and Defendants requested oral argument on the Motion. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] The following background is undisputed, unless the Court notes otherwise.

expert would later opine, was not done well. (Docs. 57 at 5; 64 at 4). Nevertheless, work on the house continued, and on March 14, 2018, Yavapai County issued a Certificate of Occupancy. (Docs. 57 at 4)

The Whiles began noticing issues with their house in 2009. (Docs. 57 at 4; 64 at 2). The doors stopped closing properly, the drywall began to crack, and the concrete walkways were separating. (Docs. 57 at 4; 64 at 2). In 2013, they determined that these issues were actually "substantial latent defects." (Doc. 57 at 43). And, in March 2016, the Whiles filed a state-court action against REP for breaching an implied warranty of workmanship (the "Underlying Lawsuit"). The Whiles alleged that "movement, cracking, separation and/or rotation of the flooring and/or concrete and/or retaining wall elements" resulted in "substantial vertical offsets (i.e., trip hazards)" and rendered the house "unsafe to its occupants and/or visitors." (*Id.*)

REP had purchased an insurance policy from Praetorian[3] that covered property damage that occurred from May 23, 2007, to May 23, 2008 (the "Policy"). (*Id.* at 3). During the Underlying Lawsuit, Praetorian supported REP's defense "under a full and complete reservation of rights . . . ." by hiring Third-Party Defendant, Springel & Fink LLP ("Springel & Fink") to serve as REP's counsel. (*Id.* at 5) (*see also* Doc. 64 at 3).

In the Underlying Lawsuit, REP's own geotechnical engineering expert opined that the only cause for the "distress at the home [was] due to settlement of the fill soil that was used to construct the building pad." (Doc. 64-1 at 34). He further opined that because of the "poorly compacted fill soil" the subsequent concrete foundation "caused the soils to compress under the weight of the concrete slab and foundation." (*Id.* at 5).

REP, still under the representation of Springel & Fink, tried to file a third-party complaint against McBride for their poor work. (Doc. 64-3 at 18–33). However, the complaint was dismissed because it was untimely under Arizona's statute of repose. (Doc. 64 at 8) (citing A.R.S. § 12-552). In this matter, the parties dispute whether Praetorian,

---

[3] REP also purchased a separate insurance policy from Plaintiff Clarendon America Insurance Company ("Clarendon"). (Doc. 16 at ¶ 8). Clarendon has not moved for summary judgment.

who provided REP with counsel, is partly responsible for the untimely filing of this third-party complaint.

In May 2020, REP and the Whiles settled and agreed upon a stipulated judgment in the Whiles' favor for $406,824.01. (Doc. 64-4 at 36–47). They also agreed that REP would assign the Whiles various insurance-related claims that might be made against REP's insurers, for not paying the amount set forth in the stipulated judgment. (*Id.* at 41).

In April 2020, before the stipulated judgment had been entered, Praetorian and Clarendon filed this action seeking a declaration that the policies they issued to REP do not provide any coverage "concerning the claims of the Whiles . . . ." (Doc. 1 at ¶ 45). They have since filed a First Amended Complaint that seeks the same declaratory relief and restitution for "all sums expended in defense of REP against the Whiles' claims . . . ." (*Id.* at ¶¶ 54, 58). Defendants have brought several counterclaims against Plaintiffs. (Doc. 26). They claim Plaintiffs breached their insurance agreements by failing to meet their indemnity obligations or make payments for the stipulated judgment, and they claim Plaintiffs acted in bad faith by failing to indemnify REP in the Underlying Action. (*Id.* at 8–9).[4]

The deadline to file dispositive motions has now passed. (Doc. 23 at 4). Only Praetorian has filed a motion for summary judgment. It seeks a declaratory judgment stating that the Policy denies coverage for the While's damages in the Underlying Lawsuit. (Doc. 57 at 9). It also seeks to judgment in its favor for Defendants' counterclaims, arguing that the counterclaims necessarily fail if declaratory judgment is entered in its favor. (*Id.* at 14).

**II.   Discussion**

Praetorian seeks summary judgment in its favor on the general argument that the Policy did not cover the damage to the Whiles' home. A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*,

---

[4] The Court notes Plaintiffs have also filed a Third-Party Complaint against Springel & Fink. (Doc. 28).

477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

The Court will begin its analysis by interpreting the Policy. Then, it will consider whether its interpretation of the Policy requires entering judgment in Praetorian's favor for Defendants' counterclaims.

**a. Whether the Policy Covers Subsidence of Land**

Insurance contract interpretation is a legal question, to which Arizona courts apply a "rule of common sense . . . ." *Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 183 P.3d 513, 515 (Ariz. 2008) (quoting *State Farm Mut. Auto. Ins. Co. v. Wilson*, 782 P.2d 727, 733 (Ariz. 1989)). Insurance policies "are to be construed in a manner according to their plain and ordinary meaning." *Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982). After a plain reading, policies may contain an "apparent ambiguity," which requires the Court to ask whether the policy is ambiguous in light of "legislative goals, social policy, and examination of the transaction as a whole." *Emps. Mut.*, 183 P.3d at 515 (quoting *State*

*Farm*, 782 P.2d at 733–34). If an ambiguity arises between apparent contradictions with the policy, courts try to "harmonize all parts of the contract by a reasonable interpretation in view of the entire instrument." *Wilshire Ins. Co. v. S.A.*, 227 P.3d 504, 506 (Ariz. Ct. App. 2010) (cleaned up). If at the end of this inquiry the apparent ambiguity is an actual ambiguity, the Court must "construe the provision against the insurer." *State Farm*, 782 P.2d at 733.

As stated in the Policy, REP would be indemnified for any "occurrence" that results in "property damage," with some exceptions, two of which are relevant. (Doc. 64-2 at 35).

The first exception states the Policy will not cover subsidence of land, which includes: "'[b]odily injury', 'property damage', or 'personal and advertising injury' arising out of, directly or indirectly, in whole or in part, subsidence, fissure, collapse, landslide, mud flow, settling, sinking, slipping, falling away, caving in, shifting, eroding, rising, expanding, tilting, or any other movement of land or earth whatsoever." (*Id.* at 38) (the "First Exception").

The second states there is no coverage for property damage that "would not have occurred in whole or in part but for the subsidence of land if such subsidence arises out of or is in any way connected to the work performed by you or on your behalf." (*Id.* at 39) (the "Second Exception").

Reading this language, Defendants argue that coverage exists for the Whiles' property damage, even though no party disputes that the damage was caused or indirectly caused by subsidence. Their argument relies on the premise that the First Exception "would afford coverage" for the claim, because it only applies to naturally occurring subsidence (as opposed to human-caused subsidence),[5] and that the Second Exception "may not afford coverage," because it applies to both human-caused and naturally occurring subsidence. (Doc. 64 at 13). Because of the different nature of the causes involved, Defendants argue the two exceptions "are clearly contradictory . . . ." (Doc. 64

---

[5] The Court notes that Praetorian disputes this interpretation. (Doc. 65 at 7). The Court need not decide whether it agrees with Defendants' premise, however, because it disagrees with Defendants' inference.

- 5 -

at 13). They reason that if "Praetorian intended to only exclude" naturally occurring subsidence it would only have included the First Exception. (*Id.*) By extension, if Praetorian intended to exclude both human-caused and naturally occurring subsidence, it would only need the Second Exception. (*Id.*) But the Policy includes both exceptions even though there is "no logical reason" to include both. (*Id.* at 14). Therefore, Defendants argue the intent of the Policy is ambiguous as to whether it covers human-caused subsidence. (Doc. 64 at 14).

The Court recognizes that the First and Second Exception of the Policy overlap, but this is not an ambiguity that requires the Court to rule against Praetorian. If the Policy were a statute, such overlap could not stand because courts "do not interpret statutes so as to render any provision redundant." *State ex rel. Horne v. AutoZone, Inc.*, 275 P.3d 1278, 1282 (Ariz. 2012). But redundancy is not a concern in interpretating insurance policies where courts must seek to "harmonize" all provisions. *Wilshire*, 227 P.3d at 506. Here, the obvious harmony is that the Policy excludes coverage for both natural and human-caused subsidence. In addition, it "is cardinal rule of contract interpretation that we do not construe one term of a contract to essentially render meaningless another term." *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 975 (Ariz. Ct. App. 2010). If the Court were to accept Defendants' argument that the First Exception evidences an intent to only exclude naturally occurring subsidence, that would render the Second Exception meaningless.

Overall, the Court finds the First Exception evidences an intent to *at least* exclude naturally occurring subsidence, and the Second Exception evidences an intent to exclude naturally occurring subsidence and human-caused subsidence. There is a plain harmony between these provisions, and so the Court finds that the Policy does exclude the Whiles' property damage from coverage.[6]

Before turning to the impact of this finding on Defendants' counterclaims, the Court will briefly address Defendants' mention of the reasonable expectations doctrine. (Doc. 64 at 11). Defendants note the point of law that insurance policies "may not be interpreted

---

[6] Having so found, the Court need not address Praetorian's argument concerning whether the property damage occurred while the Policy was in effect. (Doc. 57 at 6).

- 6 -

so as to defeat the reasonable expectations of the insured." *Samsel v. Allstate Ins. Co.*, 59 P.3d 281, 284 (Ariz. 2002). And in a different part of the briefing, they assert that when "REP purchased the Policy from Praetorian" it expected that the Policy would provide coverage for human-caused subsidence. (Doc. 64 at 7). The argument is disjointed, undeveloped, and fails to discuss the relevant caselaw pertaining to the grounds on which a reasonable expectations defense may be raised. *See Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283–84 (Ariz. 1987) (noting that Arizona courts only employ the reasonable expectations doctrine in a "*limited*" variety of situations). As noted in the Rule 16 Scheduling Order, parties shall not presume that the Court will "hunt for facts or theories" that might support a party's case. (Doc. 23 at 5). Instead of delving further into the reasonable expectations doctrine, it is enough to say the Court finds the average layperson reading the Policy would reasonably understand that the Policy does not cover damage resulting from human-caused subsidence.

### b. Defendants' Bad Faith Counterclaim

Having found that the Policy does not cover the claims, Praetorian seeks summary judgment in its favor for Defendants' bad faith counterclaim. An insurer is liable for a bad faith claim if it "acts unreasonably in the manner in which it processes a claim, . . . 'without regard to its ultimate merits.'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000) (quoting *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1270 (Ariz. 1992)). Defendants present two bases for their bad faith counterclaim. They argue Praetorian behaved unreasonably (1) by putting its own interests ahead of REP's when considering the settlement with the Whiles, and (2) by delaying its "authoriz[ation]" of litigation against McBride, "the culpable subcontractor," until after Arizona's Statute of Repose had expired such that "Defendants were unable to secure indemnity or contribution from McBride." (Doc. 64 at 14–16).

Praetorian first argues that because there is no coverage under the Policy, the bad faith counterclaims must fail. (Doc. 57 at 11). The Court summarily rejects this argument because under Arizona law, "breach of an express covenant of an insurance policy is not a

necessary prerequisite to a tort claim based on bad faith." *Deese*, 838 P.2d at 1266. Next, Praetorian argues that Defendants' second, "inadequate defense" basis for the bad faith counterclaim fails as a matter of law because it cannot be held liable for Springel & Fink's legal malpractice. (Doc. 57 at 11). Defendants assert that, regardless of whether coverage exists, Praetorian had an independent duty of care while defending REP, which includes pursuing "counterclaims, crossclaim[s] and third party complaints." (Doc. 64 at 16).

### i. *Lloyd v. State Farm Mutual Automobile Insurance Company*

For guidance on this issue, the Court looks to *Lloyd v. State Farm Mutual Automobile Insurance Company*, 860 P.2d 1300 (Ariz. Ct. App. 1992). There, an insurer took up the defense of an insured under a reservation of rights and hired an attorney for the insured. 860 P.2d at 1301–02. By the time the insurer had hired the attorney, however, the insured had already defaulted. *Id.* at 1301. The attorney, who was under the impression that the opposing counsel would not enforce the default, filed an answer on the insured's behalf. *Id.* at 1302. Then the attorney moved to set aside the default, but the trial court denied the motion. *Id.* Some months after the denial, the opposing party sent the attorney a settlement demand, which the attorney forwarded to the insurer. *Id.* The opposing party also indicated that it "planned to enforce the default." *Id.* Neither the attorney nor the insurer sent a copy of the settlement demand to the insured, although the attorney did discuss the demand with the insured to some extent. *Id.*

After considering the settlement demand of $50,000, the insurer concluded that there was no coverage, requested that the attorney withdraw, and advised the insured to obtain counsel on their own. *Id.* By the time the insurer came to this decision, the settlement demand had expired, and the opposing party won default judgment against the insured for "$10,000,000 plus costs." *Id.* The insured subsequently assigned their rights against the insurer to the opposing party. *Id.*

In the subsequent suit pursuing those rights against the insurer, the insurer claimed that "as a matter of law it can have no liability for assumption of a duty to defend in the absence of an insurance policy covering the accident." *Id.* at 1303. But the court found

the "law is contrary" to the insurer's position. *Id.* By voluntarily undertaking the insured's defense, the court held, the insurer "must perform the assumed duty with due care and is liable for any lack of due care in performing it." *Id.*

One of the assigned claims was that the insurer acted negligently by failing to defend the claim in time to file a timely answer. *Id.* at 1305. The court, citing to law from the D.C. Court of Appeals, found that an insurer who has assumed an insured's defense may be held negligent for failing to file a timely answer. *Id.* (citing *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1131 (D.C. Cir. 1989)). But because issues of fact remained about whether the insurer could have filed an answer sooner, the court reserved the ultimate determination of the insurer's negligence for the jury. *Id.*

Another assigned claim alleged that the insurer was negligent for failing to alert the insured of the settlement demand. *Id.* The court held that the insurer "had no obligation to notify" the insured of the settlement demand because it was the attorney's obligation to do so. *Id.* (noting that the attorney's obligation is rooted Ethical Rule 1.4 of Arizona's Rules of Professional Conduct).

### ii. *Lloyd*'s Rule and its Application

From *Lloyd*, the Court discerns the rule that when an insurer assumes a duty to defend an insured, the insurer may breach that duty if it inhibits the timely filing of pleadings in the insured's defense. *Id.* Inhibiting timely filings is different than failing to notify the insured of a settlement demand because the former arises from the arrangement of a legal defense, whereas the latter involves the attorney's execution of that legal defense. *Id.* An insurer is not a lawyer, but it is required to act reasonably in supporting the insured's legal defense. *See id.*

Defendants cite many cases from outside Arizona that illustrate this distinction in the context of an insurer's duty to pay for third-party actions as "defense costs." (Doc. 64 at 16) (citing *Great W. Cas. Co. v. Marathon Oil Co.*, 315 F. Supp. 2d 879, 882–83 (N.D. Ill. 2003) (holding that an insurer was liable for fees to file a third-party action because a "duty to defend would be nothing but a form of words if it did not encompass all litigation

by the insured which could defeat its liability, including claims and actions for contribution and indemnification"). *Nationwide Mut. Fire Ins. Co. v. D.R. Horton, Inc.— Birmingham*, 2016 WL 6828206, at *9 (S.D. Ala. Nov. 18, 2016) (finding that "the fees and expenses relating . . . efforts to demand indemnification from third parties and other third party settlements are appropriately categorized as 'defense costs' . . ."); *D.R. Horton, Inc.-Denver v. Mountain States Mut. Cas. Co.*, 69 F. Supp. 3d 1179, 1200 (D. Colo. 2014) ("At the end of the day it seems to me that the simple answer is that if [the insurer] owes [the insured] a defense, and if [the insured's] pursuit of third-party claims against the subcontractors was a reasonable defense strategy (which [the insurer] has never disputed), then those costs are part of the defense costs.")).

The rule from *Lloyd*, that an insurer cannot inhibit the timely filing of pleadings in the insured's defense, also comports with the Restatement's rule regarding the liability of an insurer in conducting a defense, which Praetorian asks the Court to adopt. (Doc. 57 at 13). The Restatement's rule is, in part, that "[a]n insurer is subject to liability for the harm caused by the negligent act or omission of counsel provided by the insurer . . . when the insurer directs the conduct of the counsel with respect to the negligent act or omission in a manner that overrides the duty of the counsel to exercise independent professional judgment." Restatement of the Law of Liability Insurance § 12(2) (Am. L. Inst. 2019).

Applying *Lloyd* to this matter, the Court finds that Praetorian owed REP a duty of care because it voluntarily assumed REP's defense in the Underlying Lawsuit. Having assumed this duty, Praetorian could be held liable if it inhibited the timely filing of pleadings in REP's defense, just like the insurer in *Lloyd* could be held liable for inhibiting the timely filing of an answer. *See* 860 P.2d 1035. Praetorian does not appear to recognize this as a possible theory of liability in its briefing. Instead, Praetorian maintains that the filing of a third-party complaint is an attorney's responsibility, not an insurer's. True, filing complaints is an attorney's work, but Praetorian may still be liable to the extent that it kept REP's attorneys from doing their job. For this reason, the Court rejects Praetorian's argument that the bad faith counterclaim is really just a disguised legal malpractice claim,

which cannot be assigned. (Doc. 57 at 11–12). To be clear, the essence of the bad faith counterclaim is the allegation that Praetorian acted in such a way that inhibited the timely filing of action against McBride. The focus is on what Praetorian did or did not do, not whether Springel & Fink committed malpractice in failing to timely file the third-party complaint.

As to whether Praetorian inhibited the filing of the third-party complaint against McBride, both parties fail to show anything but a genuine dispute of fact. Defendants argue that Praetorian "delayed authorizing litigation against McBride until August 17, 2016, when REP" filed the action against McBride. (Doc. 64 at 15). But they do not say what this authorization consisted of or why it was necessary. Praetorian produces a December 9, 2015, email showing that it had asked counsel from Springel & Fink whether it would make sense to file a third-party complaint against McBride. (Doc. 57 at 77). But there is no further discussion regarding when Praetorian committed to support a third-party complaint. Because this is an unresolved factual issue, the Court must leave this aspect of the bad faith counterclaim for a jury.

### c. Defendant's Breach of Contract Counterclaim

Praetorian also requests that the Court enter judgment on Defendants' breach of contract counterclaim because there was no coverage under the Policy. (Doc. 57 at 10). The breach of contract counterclaim alleges both a breach of the written Policy and its implied duty of good faith and fair dealing. (Doc. 26 at ¶¶ 47–58). The Court declines to enter judgment in Praetorian's favor on this claim because, although it has not breached the Policy's written provisions, factual questions remain as to whether Praetorian breached a duty of good faith and fair dealing with regard to its handling of the Underlying Lawsuit.

## III. Conclusion

The Court grants Praetorian's Motion for Summary judgment in part. Praetorian's request for declaratory judgment is granted. The Policy does not cover REP for the Whiles' claims in the Underlying Lawsuit. The Court denies the Motion for Summary Judgment's request to enter judgment in its favor for Defendants' breach of contract and bad faith

counterclaims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Praetorian Specialty Insurance Company's Motion for Summary Judgment (Doc. 57) is **granted** in part and **denied** in part for reasons set forth in this Order.

**IT IS FURTHER ORDERED** that there being no just reason for delay, the Clerk of Court shall enter judgment in Plaintiff Praetorian Specialty Insurance Company's favor for its declaratory judgment claim.

**IT IS FINALLY ORDERED** that, having resolved the dispositive motions, the parties shall comply with Paragraph eleven of the Rule 16 Scheduling Order with respect to notice of readiness for pretrial conference. (Doc. 23 at 7). In the alternative, the parties may jointly file notice informing the Court that they wish to be referred to a Magistrate Judge for settlement discussions.

Dated this 24th day of May, 2022.

Honorable Diane J. Humetewa
United States District Judge